[No. 41078.    En Banc.    March 4, 1971.]

PACIFIC NORTHWEST BELL TELEPHONE COMPANY *et al., Respondents,* v. THE DEPARTMENT OF REVENUE, *Appellant.*\*

\*Reported in 481 P.2d 556.

*The Attorney General, Henry W. Wager* and *Timothy R. Malone, Assistants,* for appellant.

*John N. Rupp, Donald D. MacLean, Bennett Feigenbaum, Edmund B. Raftis, Warren H. Ploeger, Lawrence D. Silvernale, James Warren Cook, James R. Woolston, Hugh L. Biggs,* and *Samuel B. Stewart,* for respondents.

McGOVERN, J.—The State Department of Revenue appeals from a declaratory judgment which held invalid a rule adopted by the department presumably under its statutory rule-making power.

The hearing before the trial court was upon stipulated facts. In 1955 our legislature enacted in substantial part the Uniform Disposition of Unclaimed Property Act, hereinafter called the act, RCW 63.28;[1] Laws of 1955, ch. 385, p. 1619. The act was patterned after a uniform act, but omitted from the act as adopted was section 16 of the uniform act, which provides:

> § 16. Periods of Limitation Not a Bar.—The expiration of any period of time specified by statute or court order, during which an action or proceeding may be commenced or enforced to obtain payment of a claim for money or recovery of property, shall not prevent the money or property from being presumed abandoned property, nor affect any duty to file a report required by this act or to pay or deliver abandoned property to the [State Treasurer].

Uniform Disposition of Unclaimed Property Act, § 16, 9A U.L.A. 435 (1965).

Respondents admit that they have not reported to the state as abandoned property those items which they hold and against which they claim to have a valid defense of the bar of the statute of limitations. That is so despite the language of RCW 63.28.170 which appears to make such reports mandatory.

Cognizant of the refusal of respondents and others to make those reports, the Department of Revenue caused

---

[1]The constitutionality of the act was upheld by this court in *In re Monks Club, Inc.,* 64 Wn.2d 845, 394 P.2d 804 (1964).

House Bill 546 to be introduced during the 1963 session of the Washington State Legislature. That bill would have amended RCW 63.28.150 which describes abandoned property as all intangible personalty unclaimed by the owner for more than 7 years after it was payable or distributable. The amendment would have reduced the prescribed period of time from 7 to 5 years for some claims and to 2 years for others. In either event, the new period of time for the presumption of abandonment would have been 1 year less than the period of time which gives rise to the defense of the statute of limitations. The bill failed of passage.

Then, in 1967, H.B. 509 was introduced during the state's fortieth legislative session. That bill was also caused to be introduced by the State Department of Revenue and would have added section 16 of the uniform act to our unclaimed property act, RCW 63.28. It, too, failed of passage.

Thereupon, January 17, 1968, the Department of Revenue adopted administrative rule UCP 1, which reads as follows:

> The expiration of any period of time specified by statute or court order, during which an action or proceeding may be commenced or enforced to obtain payment of a claim for money or recovery of property shall not prevent the money or property from being presumed abandoned property under chapter 63.28 RCW, nor affect any duty to file a report required by that chapter or to pay or deliver abandoned property to the department of revenue. This rule shall not apply to property presumed abandoned prior to June 9, 1955.

WAC 458-65-010. Respondents then instituted this action in declaratory form, asking the trial court to declare the rule invalid on the ground that it exceeds the statutory rule-making authority of the Department of Revenue, the agency which promulgated it. The trial court adopted the legal argument of respondents and, accordingly, entered such an order. This appeal followed.

Appellant asserts that the rule was adopted to administratively carry out the provisions of the unclaimed property act and that it simply declares existing law. It states that the rule is not intended to fill a legislative omission,

but rather to put into regular written form the administrative interpretation of the act and to make clear to all holders of abandoned property that the statute of limitations has no application to the unclaimed property act. As authority for its proposition, appellant refers us to RCW 4.16.160, which provides:

That there shall be no limitation to actions brought in the name or for the benefit of the state, and no claim of right predicated upon the lapse of time shall ever be asserted against the state . . .

We affirm the trial court and hold that the statute of limitations may be a bar to the state's claim of right under the unclaimed property act, RCW 63.28. That being so, Department of Revenue rule UCP 1 which declares that the bar of the statute of limitations may not be successfully urged against the department under any circumstances is therefore invalid.

■■ The state's rights under the act are derivative and it succeeds, subject to the act's provisions, to whatever rights the owner of the abandoned property may have. If the owner may proceed against the holder of the abandoned property and legally obtain that property, then the state may also effectively enforce that same claim against the holder. If, however, the holder of the property possesses the valid defense of the bar of the statute of limitations, then that holder may successfully assert that bar against either the owner or the state, which stands in the position of the owner. The rights of the state are not independent of the rights of the owner and are therefore no greater than those of the person to whose rights it succeeds. That being so, RCW 4.16.160, which states that there shall be no limitation to actions brought in the name of the state is not applicable.

The state's rights under the act are derivative because our act, unlike the uniform act, makes provision for escheat. *See* RCW 63.28.280. Proceedings under the act affect title to the property and not mere custody of the property as claimed by the Department of Revenue. Under our law

of escheats, RCW 11.08, title to the escheat property vests in the state, subject to other provisions of the act.

It should be observed that the prefatory note to the Uniform Disposition of Unclaimed Property Act bears an acknowledgment by the National Conference of Commissioners on Uniform State Laws that the escheat-type statute, like ours, creates a title change to the property involved whereas the uniform act does not. It says:

> The Uniform Act is custodial in nature,—that is to say, it does not result in the loss of the owner's property rights. The state takes custody and remains the custodian in perpetuity. Although the actual possibility of his presenting a claim in the distant future is not great, the owner retains his right of presenting his claim at any time no matter how remote. State records will have to be kept on a permanent basis. In this respect the measure differs from the escheat type of statute, pursuant to which the right of the owner is foreclosed and the title to the property passes to the state.

Uniform Disposition of Unclaimed Property Act, pref. n., 9A U.L.A. 412, 413 (1965).

Other progressive state courts agree with this analysis that the rights of states under acts similar to our act are only derivative. The New Jersey unclaimed property act, like ours, does not contain a provision similar to section 16 of the uniform act. In *State v. Standard Oil Co.*, 5 N.J. 281, 74 A.2d 565 (1950), *aff'd sub nom.*, *Standard Oil Co. v. New Jersey*, 341 U.S. 428, 95 L. Ed. 1078, 71 S. Ct. 822 (1951), the New Jersey court in construing the act held, at page 298:

> where all remedy upon the intangibles has been barred by the statute of limitations, there is no property to escheat under the act now before us. The State's right is purely derivative; it takes only the interest of the unknown or absentee owner. If the remedy has been extinguished by the statute of limitations, the State is under like incapacity. The State takes only the creditor's right . . .

And the California unclaimed property act was considered in *Bank of Am. Nat'l Trust & Sav. Ass'n v. Cranston*, 252 Cal. App. 2d 208, 211, 60 Cal. Rptr. 336 (1967). That court

said: "The Controller's rights under the act are derivative. He succeeds, subject to the act's provisions, to whatever rights the owners of the abandoned property may have".

In *Guaranty Trust Co. v. United States*, 304 U.S. 126, 82 L. Ed. 1224, 58 S. Ct. 785 (1938), the then Russian government had assigned to the United States government the right to certain bank accounts in the state of New York, against which the statute of limitations had run. It was argued that the bar of the statute of limitations is not operative against our national government. In disposing of that argument, the United States Supreme Court outlined the facts before it, similar to those here, and then applied the appropriate law, as follows, at page 141:

If the claim of the Russian Government was barred by limitation the United States as its assignee can be in no better position either because of the rule *nullum tempus* or by virtue of the terms of the assignment. We need waste no time on refinements upon the suggested distinction between rights and remedies, for we may assume for present purposes that the United States acquired by the assignment whatever rights then survived the running of the statute against the Russian Government, and that it may assert those rights subject to such plea of limitations as may be made by petitioner.

As has already been noted, the rule *nullum tempus* rests on the public policy of protecting the domestic sovereign from omissions of its own officers and agents whose neglect, through lapse of time, would otherwise deprive it of rights. But the circumstances of the present case admit of no appeal to such a policy. There has been no neglect or delay by the United States or its agents, and it has lost no rights by any lapse of time after the assignment. The question is whether the exemption of the United States from the consequences of the neglect of its own agents is enough to relieve it from the consequences of the Russian Government's failure to prosecute the claim. Proof, under a plea of limitation, that the six-year statutory period had run before the assignment offends against no policy of protecting the domestic sovereign. It deprives the United States of no right, for the proof demonstrates that the United States never acquired a right free of a preexisting

· infirmity, the running of limitations against its assignor, which public policy does not forbid.

We believe that rationale to be particularly applicable to the matter before us.

■■ In conclusion, we find that the State Department of Revenue trespassed into the arena of the legislative prerogative when it adopted rule UCP 1. The fact that our legislature willfully omitted section 16 of the uniform act from our act and the fact that H.B. 546, in the year 1963, and H.B. 509, in the year 1967, both subsequently failed to pass the legislature, we think, gives concrete evidence of a legislative intendment contrary to the rule adopted by the Department of Revenue. What constitutes a reasonable time limitation within which a matured contractual obligation may be legally enforced against another is primarily a question for the legislature and not for an agency within the executive branch of government. *Rand v. Bossen*, 27 Cal. 2d 61, 162 P.2d 457 (1945).

■ We also reaffirm the age-old principle that the bar of the statute of limitations is a defense that must be asserted and cannot be used as a means for acquiring affirmative relief. *Lovell v. Reid*, 34 Wn.2d 847, 210 P.2d 803 (1949). If the respondents, or others, believe that they are entitled under the act to assert the legal defense of the bar of the statute of limitations against the state, let them assert such claim in their required report. In that way the issue can be drawn and thereafter appropriately presented to a court of competent jurisdiction under an existing set of facts.

The judgment of the trial court is affirmed.

FINLEY, ROSELLINI, NEILL, and STAFFORD, JJ., concur.

HALE, J. (dissenting)—The court, I think, has read into the abandoned property law a statute of limitations where none existed nor was intended. The legislature omitted from the Uniform Disposition of Unclaimed Property Act, RCW 63.28, a section on time limitations, Uniform Disposition of Unclaimed Property Act, § 16, 9A U.L.A. 435 (1965), for the obvious reason that it did not deem it necessary to

restate applicable law. Legislative policy relieving the state from statutes of limitation has already been declared, for by express statute claims or actions by the state generally are not to be rendered unenforceable solely by lapse of time. RCW 4.16.160.[2] To include section 16 would thus be superfluous. The courts should not require the legislature to affirmatively negate a statute of limitations in order to be sure that none will be applied. In finding a statute of limitations here, the court, I suspect has violated a cardinal principle of statutory construction that a court cannot read into a statute something which it may conceive the legislature unintentionally left out. *Department of Labor & Indus. v. Cook*, 44 Wn.2d 671, 269 P.2d 962 (1954).

The legislature is presumed to be familiar with existing statutes and with court decisions construing them. *Graffell v. Honeysuckle*, 30 Wn.2d 390, 191 P.2d 858 (1948); *Ropo, Inc. v. Seattle*, 67 Wn.2d 574, 409 P.2d 148 (1965). It was thus aware of RCW 4.16.160 which declares that the state is not subject to a statute of limitations. A statute should be read as a whole and with a purpose to ascertain the legislative intent; strained and absurd consequences are to be avoided. *Martin v. Department of Social Sec.*, 12 Wn.2d 329, 121 P.2d 394 (1942). The law presumes that the legislature does not enact vain or useless legislation. *Guinness v. State*, 40 Wn.2d 677, 246 P.2d 433 (1952). And, in applying a statute, the courts should keep an eye out for its spirit or purpose, too. *State ex rel. Thorp v. Devin*, 26 Wn.2d 333, 173 P.2d 994 (1946).

So clearly stated and straightforward a statute as this

---

[2]"The limitations prescribed in this chapter shall apply to actions brought in the name or for the benefit of any county or other municipality or quasimunicipality of the state, in the same manner as to actions brought by private parties: *Provided,* That there shall be no limitation to actions brought in the name or for the benefit of the state, and no claim of right predicated upon the lapse of time shall ever be asserted against the state: *And further provided,* That no previously existing statute of limitations shall be interposed as a defense to any action brought in the name or for the benefit of the state, although such statute may have run and become fully operative as a defense prior to February 27, 1903, nor shall any cause of action against the state be predicated upon such a statute." RCW 4.16.160.

one needs no extrinsic interpretive aids. Thus, the court should read the whole statute as written and avoid making crucial inferences from what was not enacted. When the entire Uniform Disposition of Unclaimed Property Act (RCW 63.28) is read in this fashion, unclouded and untrammeled by the application of interpretive devices, the legislative intent is apparent. The statute definitively declares that every holder of abandoned property must report to the Department of Revenue all of the property held; and supply other pertinent and detailed information to the department. RCW 63.28.170. Reporting and delivery are mandatory upon the holder (RCW 63.28.190), and the department as an agency of the state thereafter holds the property for the true owner. The department is not required to serve a demand upon the holder to evoke any of the holder's duties, but full responsibility for compliance with the statute falls automatically on him.

That the legislature did not limit the time within which the claims of the state or owner against the holder would expire or be defeated nor adopt what is further described as section 16 of the Uniform Disposition of Unclaimed Property Act means only that it did not intend to do so. The omission—if it is to be so regarded—should be deemed intentional, and shows, if anything, a purpose to place no limitation upon the time in which the state and true owner may enforce their respective rights in unclaimed and abandoned property. Thus, the legislative intent must be ascertained from what the statute says, not from what it might have said.

The court, however, has made an assumption that the legislature could or might have done something else and given that assumption overriding significance; it has taken nonlaw and treated it as the controlling interpretive key to the law as enacted. This method of statutory construction, I fear, does not bode well for other enactments. How will future legislatures and their codifiers preserve for us the nonlaw, the imaginary sections of statutes which could have been but were never enacted? How lay to rest the ghosts of laws never passed?

In enacting RCW 63.28, the legislature recognized that abandoned and unclaimed property should, as a matter of public policy, be brought under the control, safekeeping and interim use of the sovereign state for possible eventual return to its true owner. It adopted a comprehensive legislative scheme to carry out this policy applicable in this case to legal entities which, in the ordinary course of doing business, inevitably accumulate in their custody and control substantial property of others in money or money's worth. Pacific Northwest Bell; Chicago, Milwaukee, St. Paul & Pacific; Great Northern; Northern Pacific; Spokane, Portland & Seattle; and Union Pacific all receive on deposit or have left with them by their customers and clients substantial quantities of money and property which ultimately never are claimed by their true owners. The statute generally, in addition, covers banking organizations, savings and loan corporations, credit unions, financial organizations, life insurance companies, decedent estates and trusts, public authorities, industrial loan companies, public utilities, transportation and storage companies—in short, nearly every kind and type of business or enterprise that in the ordinary course of doing business holds the money or property of another either as a depositary, bailee, trustee, fiduciary or agent. RCW 63.28.070. Not only is this a comprehensive statute, but one designed to operate equitably. It accomplishes, I think, precisely what the legislature intended, *i.e.*, to deal fairly and effectively with property received in the course of business and later abandoned or left unclaimed. Taken as written, the statute preserves the rights of the true owner, gives the state on behalf of all of the people the use of and benefit of the property until the true owner appears and establishes his claim to it, and relieves the custodian or holder of liability for its further preservation and protection. It contains no escape clause by which one who has acquired possession or control over the abandoned and unclaimed property of another may succeed to ownership solely by lapse of time.

But the majority view, reading a statute of limitations into the act, defeats these obvious legislative intentions.

Under the court's interpretation, many owners will lose their property solely by lapse of time; the state will lose the use and benefit of the abandoned property; and the holders will achieve a substantial unearned enrichment.

Among other results, the court has, I think, vitiated the legislature's intent to remedy some noticeable defects in the common law. Obviously, the legislature has concluded that the common-law rules governing abandoned property failed to give adequate protection to the true owner and fostered unjust and unearned enrichments in the holder, and at the same time left the holder or bailee doubtful and uncertain concerning his liability for preservation of the property and duty to the owner. Accordingly, Laws of 1955, ch. 385, p. 1619, RCW 63.28, was intended, among other things, to modify the common-law rules governing the disposition of such property and, so far as the law can do it, remedy their inadequacies.

Read as written, without judicial embellishment, the enactment admirably corrects the deficiencies of the common law. It provides that abandoned and unclaimed property must be turned over to the state; the state receives the property, not as an owner but primarily as trustee for the true owner and secondarily for the use and benefit of all the people. As trustee under the statute, the state has the use of the property until such time as the true owner finally proves his claim to it. All people, through the state as common trustee, thus will have the use and benefit of the abandoned property until the owner elects to claim it. Instead of suffering a forfeiture generated by lapse of time, inadvertence, incompetence or ignorance, as is likely to happen under the common law, the true owner's rights in the property may ultimately be asserted and when he claims his property it will be restored to him. I doubt that the courts could devise a fairer or more effective set of remedies and duties.

The particular segment of proposed legislation described in the court's opinion as section 16 of the Uniform Disposition of Unclaimed Property Act,[3] while possibly recom-

---

[3]"The expiration of any period of time specified by statute or court

mended for adoption by an advisory but nonlegislative or
nonjudicial body, in my opinion, was unnecessary to ac-
complish the legislative intent, and had it been enacted
would amount to no more than a redundancy. That the
Department of Revenue in rule UCP 1 saw fit to incor-
porate this suggested section in its departmental regulation
is neither here nor there for the legislature has included in
its regular statute of limitations (RCW 4.16.040, *et seq.*)
a provision that the state is not subject to a statute of limi-
tations, reading:

> [T]here shall be no limitation to actions brought in the
> name or for the benefit of the state, and *no claim of right
> predicated upon the lapse of time shall ever be asserted
> against the state . . .*

(Italics mine.) RCW 4.16.160.

Accordingly, for the recovery of abandoned and un-
claimed property, no lapse of time gives the holder of
unclaimed property any rights in that property superior
to the rights of the state. RCW 4.16.160. The time intervals
set forth in the unclaimed and abandoned property statute
(RCW 63.28.080-.150) are designed not to set up or alter
limitations upon the time within which actions to acquire
possession of abandoned property must be brought but
rather to fix with reasonable certainty the minimum period
of time within which property shall be deemed abandoned
and thus, without exception, to be delivered over to the
State of Washington for further safekeeping or deposit.
Although the statute places no limit whatever upon the
time within which the state may require delivery and
demand custody, it does prescribe precise periods after
which the bailee or depositary must deliver the property
over to the state. Property under the statutes must now
be turned over to the state as abandoned property, but

---

order, during which an action or proceeding may be commenced or en-
forced to obtain payment of a claim for money or recovery of property,
shall not prevent the money or property from being presumed abandoned
property, nor affect any duty to file a report required by this act or to
pay or deliver abandoned property to the [State Treasurer]." Uniform
Disposition of Unclaimed Property Act, § 16, 9A U.L.A. 435 (1965).

without fear of successful legal reprisal from the true owner, as follows: RCW 63.28.080, property held by banking and financial organizations, 12 years; RCW 63.28.090, property held by life insurance companies, 7 years; RCW 63.28.100, property held by utilities, 7 years; RCW 63.28.110, property held by business associations, 7 years; RCW 63.28.120, property held in course of dissolution of business association, 2 years after date of final distribution; RCW 63.28.130, property held by fiduciaries, 7 years; RCW 63.28 .140, property held by a court or public officer, 7 years; and RCW 63.28.150, all property not specifically covered, 7 years.

To protect the true owner against forfeitures, the act creates a defeasible but beneficial right in the state requiring that every holder who, according to statute, delivers property into the hands of the Department of Revenue must retain records concerning his transactions with the owner or bailor for a period of time from the date the property is delivered to the department. RCW 63.28.210. After such delivery, the true owner will receive no income or increments from the property, and the original holder and the state will not be liable for either. RCW 63.28.220. All property shall be converted to money by sale by the Department of Revenue in such a way as to bring an optimum price (RCW 63.28.230) and then funds sufficient to meet all claims go into a state controlled trust fund (RCW 63.28.240) to be available for use by the state until reclaimed by the true owner. RCW 63.28.250. Only when it is shown that the owner "has died and that no other person is entitled to it" does it escheat. RCW 63.28.280. Thus, the statute as drafted is nicely designed to preserve the true owner's rights, obviate forfeitures and prevent unjust enrichment.

Rule 16, adopted by the Department of Revenue, is thus surplusage and not essential to maintain the state's claim as trustee to abandoned property. As with so many other regulations promulgated by administrative agencies, it is a rule designed largely to leave the department's official position free from doubt; doing no more than restate what a statute declares—that there shall be no time limit within

which the state's claims become ·inferior to the claims of property holders.

The holder's duties are made doubly clear for the statute not only categorically places all holders of abandoned property under an affirmative duty of reporting and delivering such property to the state, but makes it a criminal offense to fail to do either. RCW 63.28.310. A statute of limitations incorporated into the statute enables a wily bailee to profit by his offense, or secure a windfall—two eventualities the abandoned property act as written was, I think, designed to avoid. If by one means or another the holder can manage to keep the property until the statute of limitations has run against the true owner's claim, it will, under the court's interpretation, be his—a result, I think, the statute was intended to prevent.

I would, therefore, reverse.

HAMILTON, C.J., and HUNTER, J., concur with HALE, J.

May 24, 1971. Petition for rehearing denied.